***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement filed 6 December 1999 and in a "Hearing Agreement and Stipulations of the Parties" filed 25 February 2000 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant-employer was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. The plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from May 29, 1968 to present.
4. The Plaintiff was last injuriously exposed to asbestos during the plaintiffs employment with defendant, Weyerhaeuser Company, and specifically, that the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as is required by N.C. Gen. Statute § 97-57.
5. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. It is stipulated that plaintiff has worked at Weyerhaeuser since 1968. He worked for six years in the boiler room as an electrician. His duties included using compressed air to clean asbestos off machines. He was also exposed while blowing out large motors that had sucked in asbestos with the cooling air. He currently works as an electrician in the plant, and has been exposed to asbestos from the deteriorating insulation falling from the pipes which are all over the facility. Throughout his employment, he has worked in close proximity to individuals who were removing asbestos-containing insulation from pipes and boilers to make repairs. He was not provided with a respirator during the vast majority of the years he was exposed to asbestos.
7. The defendant stipulated that the plaintiff does suffer from an occupational disease, asbestosis; further that he was diagnosed with asbestosis on September 15, 1998 by Dr. Stephen Proctor. The defendant further agrees that a Member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records will be stipulated into evidence for consideration by the deputy commissioner.
8. The plaintiff income fifty-two (52) weeks prior to his diagnosis of asbestosis was $64,773.47, which was sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year of 1998 which is $532.00.
9. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N. G. Gen. Statute § 97-12, and the defendant agreed that should the claim be found compensable, the defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
10. The parties agreed further that should plaintiff be awarded compensation, the deputy commissioner may include language removing the plaintiff from further exposure pursuant to N.C. Gen. Statute § 97-61-5(b).
11. The parties further agreed that should the Commission determine N.C. Gen. Statute § 97-60 through § 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
12. The issues before the deputy commissioner were:
 a. Does N.C. Gen. Statute § 97-60 through § 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
b. What benefits is the plaintiff entitled to receive, if any?
13. The parties stipulate into evidence:
a. W-2 forms
b. Form 22
c. Plaintiff's diagnosing medical records
 d. Plaintiff's employment and/or personnel files including medical records, curriculum vitae of all physicians.
 ***********
Based upon all the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Plaintiff has been employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from May 29, 1968 until present.
4. Plaintiff has presented undisputed evidence regarding substantial exposures to the hazards of asbestos in differing occupations throughout his employment with defendant.
5. Plaintiff worked for six years in the boiler room as an electrician. His duties included using compressed air to clean asbestos off machines. He was also exposed while blowing out large motors that had sucked in asbestos with the cooling air. He currently works as an electrician in the plant, and has been exposed to asbestos from the deteriorating insulation falling from the pipes which are all over the facility. Throughout his employment, he has worked in close proximity to individuals who were removing asbestos-containing insulation from pipes and boilers to make repairs.
6. The plaintiff was exposed to asbestos containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months during his employment with defendant.
7. The defendant admitted that the plaintiff does suffer from asbestosis, an occupational disease.
8. The parties submitted as evidence the medical records and reports of plaintiff from the following physicians: Drs. Ted R. Kunstling, Stephen Proctor, Albert Curseen, Fred Dula, Phillip Lucas and Robert Shaw. Great weight is given to the undisputed findings and opinions of these doctors.
9. Plaintiff was examined by Dr. Stephen Proctor of Pulmonary Medicine and Critical Care on September 15, 1998. Dr. Proctor took an occupational history from the Plaintiff-Employee who stated he worked at Weyerhaeuser from 1968 until the present time. Plaintiff reported that he works as an electrician and previously worked in the boilers. His duties included using compressed air to clean asbestos off machines. He worked in close proximity to individuals who were removing asbestos-containing insulation from pipes to make repairs and insulating pipes and boilers. Respiratory protection was not used until about ten years ago. Plaintiff has a history of smoking up to 1 pack per day for 20 years, but quit smoking 13 years ago. He also reported an occasional nonproductive cough and chest tightness.
It was the opinion of Dr. Proctor after a complete physical examination, pulmonary function tests, and review of medial records including radiographic studies, and from the history taken that plaintiff has mild asbestosis and mild pleural thickening related to asbestos exposure. He reported that the lung examination is notable for faint bilateral crackles and his chest x-ray and CT showed mild bilateral increased interstitial markings and mild bilateral pleural thickening. He was of the opinion that plaintiff had a Class I respiratory impairment based on AMA guidelines.
10. A CT scan and chest x-ray report of plaintiff dated April 9, 1998 was interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. He reported mild, diffuse-type pleural thickening bilaterally and a few small, focal pleural plaques on the CT scan. In addition, he reported interstitial changes in both lungs consisting of short, thickened interlobular lines extending to the pleural surfaces. He also noted a nodular density adjacent to the pleural surface measuring about 1.0 cm in diameter. On the chest x-ray, he reported mild interstitial changes in the mid to lower portions of both lungs. There was slight pleural thickening on both sides. Overall, it was his opinion that the findings are consistent with mild asbestosis in the appropriate clinical situation.
11. Dr. Fred Dula also interpreted a CT scan report dated December 16, 1999. He reported finding interstitial changes in both lungs, including short thickened interlobular septal lines extending to the pleural surfaces and a diffuse ground-glass appearance to the lung parenchyma, which can indicate a fibrotic process. He also found diffuse-type pleural thickening bilaterally along with two nodular densities. Overall, it is Dr. Dula's impression that the findings are consistent with asbestosis.
12. Dr. Phillip H. Lucas, a radiologist and NIOSH B-reader, reviewed a chest x-ray of plaintiff dated December 16, 1999. He reported irregular interstitial opacities in both lower lung zones, the size and shape of which are classified as s/t and the profusion is 1/0. His opinion is that plaintiff's chest x-ray showed bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
13. Dr. Albert Curseen evaluated plaintiff on August 31, 1999. Dr. Curseen reported plaintiff's occupational history of working for Weyerhaeuser Paper Company for 31 years as an electrician and that he worked in the boiler room where he would have to blow out motors with compressed air, exposing him to large amounts of dust from insulation. Plaintiff also reported that he worked side by side with pipe fitters who tore off insulation as well as blowing down pipes and valves to access electrical wires.
14. After a full physical evaluation, performance of pulmonary function tests, and review of radiological studies, it was the opinion of Dr. Curseen that the preponderance of medical evidence substantiates the diagnosis of asbestosis. He noted that plaintiff has an extremely strong history for asbestos exposure. Dr. Curseen reported that he discussed at length with plaintiff the increased risk for pulmonary malignancies due to his asbestos exposure and the need to get an annual radiograph to screen against such malignancies, as well as to follow the course of his asbestosis.
15. Dr. Ted R. Kunstling, a panel physician, performed a "Pulmonary Medicine Evaluation" of plaintiff at the request of the North Carolina Industrial Commission on June 1, 1999. He took an occupational history of the plaintiff and reported that plaintiff worked the last 31 years as an electrician at Weyerhaeuser. Between 1970 and 1976, he worked about six years as a boiler room electrician where he would frequently blow out motors being exposed to asbestos dust without using protection. He further reported that plaintiff may have had less exposure to asbestos in other work areas, although asbestos insulation was on pipes which were occasionally being maintained. Plaintiff also reported to Dr. Kunstling that he has noticed some exertional dyspnea, chronic dry cough, and a feeling of tightness in his right lung when he takes a deep breath for about five years.
Dr. Kunstling conducted a pulmonary function study, blood test, and chest x-rays. He also reviewed other medical records including a CT scan report. It was his conclusion that plaintiff has a history of occupational exposure to asbestos, but no definite evidence of asbestos or pleural plaques related to asbestos exposure by his examination. However, Dr. Kunstling recommended a follow up CT scan of the chest to assess whether there is subtle evidence of pulmonary fibrosis consistent with asbestosis and pleural plaques. Dr. Kunstling did perform a follow CT scan on August 18, 1999 at Cardinal Healthcare Diagnostic Center. After reviewing the CT scan, Dr. Kunstling reported that plaintiff does have evidence of asbestosis in an addendum written on August 27, 1999, which was submitted as evidence in this claim.
16. Two medical reports were written by Dr. Robert Shaw who was one of the physicians employed by defendant to oversee the asbestos medical surveillance program at their plant in Plymouth, North Carolina. In his report written on October 20, 1989, Dr. Shaw noted that there is bilateral apical pleural thickening on plaintiff's chest x-ray dated September 8, 1989. In his report written on November 12, 1990, he noted that there is stable apical scarring on plaintiff's chest x-ray dated February 26, 1990.
17. Defendant admitted that plaintiff is suffering from asbestosis, an occupational disease, and that he was diagnosed with asbestosis and asbestos related pleural plaques while still employed by the Defendant. This admission is supported by the above-referenced medical records and reports submitted into the record as evidence.
18. Plaintiff's pulmonary impairment due to his asbestosis is permanent and is likely to progress. Plaintiff-Employee would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and his asbestos disease related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
19. Plaintiff would benefit from respiratory protection.
20. Plaintiff's wages for 1998 were $64,773.47. The plaintiff's average weekly wage was $1,245.64 entitling the plaintiff to the maximum worker's compensation rate of $532.00 per week for 1998 and the maximum rate of $588.00 for 2000, the year the Order of Removal provided his wages did not decrease.
21. The issue of the constitutionality of N.C. Gen. Stat. §§97-60; 97-61.1 et seq. has previously been raised by the defendant and this issue was subsequently rendered moot based upon subsequent North Carolina Court of Appeals decisions findings the statutes constitutional.
22. Defendant has stipulated and the Commission finds that plaintiff is subject to an Order removing the him from further exposure to the hazards of asbestos in any occupation within plaintiff's employment or in any other employment.
23. The issue of plaintiff's entitlement to attorney's fees for defendant's unreasonable defense of this claim was raised by plaintiff in the Pre-trial Agreement but not in the subsequent "Hearing Agreement and Stipulations of the Parties". This issue should be reserved until the final hearing and final award is made in this case.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while in the employment of the defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby affirms the deputy commissioner's issuance of an Order of Removal issued by the deputy commissioner. Id.
The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesiaand Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The record contains plaintiff's average weekly wages for 1998, the year of his diagnosis, but does not provide plaintiff's average weekly wage for 2000, the year the Deputy Commissioner issued the Order of Removal. However, plaintiff's wages in 1998 are such that the calculation of his compensation reaches the maximum allowed by statute for the year 2000, which was $588.00 provided his wages did not decrease. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00 per week unless the parties provide the Commission with evidence of a wage decrease. N.C. Gen. Stat. § 97-61.5; Roberts v.Southeastern Magnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742
(1983).
6. The issue of the constitutionality of N.C. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. Following the second and third examinations and reports as required under N.C. Gen. Stat. § 97-61 et seq. further hearings may be required. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings, if the parties cannot agree.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestosis. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation at the rate of $588.00 per week for 104 weeks as a result of his admitted contraction of asbestosis, and asbestos-related plural disease while employed by defendant, commencing on 30 August 2000, the date of the initial Order of Removal entered by Deputy Commissioner Garner. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of $29.40 (constituting 5% of the weekly compensation due as per agreement of the parties) to plaintiff which shall also be paid in a lump sum for the 104 weeks past benefit due in paragraph 1 above. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5% entitling plaintiff to a total worker's compensation rate of $617.40. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs due this Commission.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearings following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
BSB:md